PEOPLE ex rel. CITY OF N. Y. *v.* WOODRUFF. 123

App. Div.]        Third Department, March Term, 1899.

The People of the State of New York ex rel. The City of New York, Appellant, *v.* Timothy L. Woodruff, as Lieutenant-Governor of the State of New York, and Others, Composing the Commissioners of the Land Office of the State of New York, and Edward A. Whittemore and Others, Respondents.

*Commissioners of the Land Office — grant of land under water in the city of New York — right of the board of docks of New York city to require conditions to be inserted therein.*

Under section 86 of the Greater New York charter (Laws of 1897, chap. 378), providing that no grant of land under water within the city of New York shall be made except to the city of New York or to the riparian proprietor, and that the Commissioners of the Land Office shall give notice of all applications by riparian owners for grants of land under water "to the board of docks of the city, which shall examine into such application and determine whether the granting of the same will conflict with the rights of the city under this act, or be otherwise injurious to the public interests of the said city, and shall report their conclusions to said Commissioners, who shall insert such terms and conditions in the grant recommended by the board of docks as will protect the public interests of the city in respect to navigation and commerce," the city of New York is not as a matter of legal right entitled to require the Commissioners of the Land Office to insert in a grant, to a riparian proprietor, of lands under water, conditions recommended by the board of docks, to the effect that in case the city of New York should, in the future, desire to improve the water front of the city, it should have the right to enter upon the land granted, after giving notice of its intention so to do, and that the grantees would surrender without compensation the premises with improvements thereon, or so much thereof as should lie within the lines of any exterior street, wharf or place determined upon by the board of docks, and approved by the commissioners of the sinking fund.

*Quære,* whether the Commissioners of the Land Office would have power to grant lands under water to a riparian proprietor if the board of docks should report that the grant would conflict with the rights of the city or be otherwise injurious to its public interests; or if the board of docks took no action upon the riparian owner's application.

Appeal by the relator, The City of New York, from an order of the Supreme Court, made at the Albany Special Term and entered in the office of the clerk of the county of Albany on the 11th day of November, 1898, denying the relator's motion for a peremptory writ of mandamus, directed to Timothy L. Woodruff, as Lieutenant-Governor of the State of New York, and others, composing the Commissioners

of the Land Office of the State of New York, requiring them to insert in letters patent about to be issued to Edward A. Whittemore, Charles A. Whittemore and Clarence B. Whittemore, certain terms and conditions recommended by the board of docks of the city of New York.

On the 30th of December, 1897, Edward A. Whittemore and others, after due notice, applied to the Commissioners of the Land Office for a grant of land under water on the East river, at Long Island City. The applicants were the owners of the uplands adjacent to the lands under water applied for, and in their application they stated that it was their intention to forthwith appropriate said lands under water to the purposes of commerce, by the erection thereon of a public dock or docks.

On the 21st of January, 1898, pursuant to the provisions of chapter 378 of the Laws of 1897, the Greater New York charter, so called, the Commissioners of the Land Office gave notice of such application to the board of docks of said city, with a request that they examine into such application and determine whether the granting of the same will conflict with the rights of the city under the provisions of the act referred to, or be otherwise injurious to the public interests of the city, and report their conclusions to the Commissioners of the Land Office.

Thereupon the board of docks examined into such application, and, on the 28th of January, 1898, reported to the commissioners that it had no objections to the granting of the application, provided there were inserted in the grant certain specified provisions in the form of covenants by the party of the second part. These conditions or covenants in substance provided that, in case the city of New York in the future should desire to improve the water front of the city the proper department should have the right to enter upon the lands granted, after giving certain notice of its intention so to do, and that the grantees would surrender without compensation the premises, with improvements thereon, or so much thereof as may or shall lie within the lines of any exterior street, wharf or place determined upon by the board of docks, and approved by the commissioners of the sinking fund.

On the 28th of April, 1898, after notice to the board of docks, a hearing was had before the commissioners upon the said application,

at which time the board of docks demanded the insertion, in the grant applied for, of the specified covenants and conditions. This demand was denied, and the application referred to the standing committee of the board of commissioners. This committee afterward reported in favor of a grant to the applicants which should be subject to the conditions, to be inserted therein, that within three years from its date the grantee should actually appropriate the premises to the purposes of commerce by erecting thereon a public dock or docks. From the report of the committee it appeared that there was a hearing of the matter before them, at which the board of docks appeared by counsel, as well as other parties, and that at that meeting the committee stated that the Land Commissioners were of the opinion that the proposed covenants and conditions asked for by the city were unreasonable, especially that portion thereof which required the grantees to surrender the premises without compensation; that the commissioners were desirous of complying with the provisions of section 86 of the charter, and inserting such reasonable terms and conditions as would protect the public interests of the city in respect to navigation and commerce; that the representative of the board of docks thereupon stated in substance that he had no further suggestions or representations to make than those already presented to the commissioners.

Thereafter, and on the 28th of July, 1898, the Commissioners of the Land Office, by resolution, adopted the report of the committee, and directed that letters patent be accordingly issued. The relator, then, on petition and notice, applied for a peremptory mandamus requiring the commissioners to insert the terms and conditions presented by the board of docks. From the order denying the application for such writ, this appeal is taken.

Section 86 of the charter is as follows:

"§ 86. After the approval of this act no patent of soil or land under water within The City of New York, as herein constituted, shall be made except to the city of New York or to the riparian proprietor. If the board of docks, with the approval of the commissioners of the sinking fund, shall project a plan or plans for the construction of docks between street intersections as aforesaid, and desire a grant of land under water for that purpose, they shall make application therefor to the commissioners of the land office, who

126  PEOPLE ex rel. CITY OF N. Y. v. WOODRUFF.

THIRD DEPARTMENT, MARCH TERM, 1899.          [Vol. 39.

thereupon shall give notice to the riparian proprietor before taking action in the matter, and shall make such grant to the city for the purposes specified in section eighty-three. Such grant, however, shall be subject to all the rights of the riparian proprietor, and before the city shall construct such public wharves or other structures in front of the land of such riparian proprietor, the city shall make just compensation to such proprietor for the value of all the riparian rights. If the commissioners shall make a grant to the riparian proprietor it shall be confined to soil or land under water in front of the land of such riparian proprietor. If application be made to the commissioners of the land office by the riparian proprietor for a grant of soil or land under water within The City of New York, as herein constituted, said commissioners shall give notice thereof to the board of docks of the city, which shall examine into such application and determine whether the granting of the same will conflict with the rights of the city under this act, or be otherwise injurious to the public interests of the said city, and shall report their conclusions to said commissioners, who shall insert such terms and conditions in the grant recommended by the board of docks as will protect the public interests of the city in respect to navigation and commerce. The validity of any such grant or patent may be judicially determined in an action brought by and in the name of the city."

*John Whalen, Corporation Counsel, Charles Blandy* and *E. J. Freedman*, for the appellant.

*John C. Davies, Attorney-General,* and *George W. Stephens,* for the respondents.

MERWIN, J. :

The question in this case is whether or nor, as matter of legal right, the relator is entitled to require the Commissioners of the Land Office to insert in the deed to the applicants the terms and conditions proposed by the board of docks.

The contention of the relator is based on the provisions of section 86 of the charter. Its claim is that, under that section, in a case like the present, the commissioners are bound to insert in the grant the terms and conditions recommended by the board of docks;

that the words " recommended by the board of docks " refer, not to the grant, but to the terms and conditions. If we then transpose the words in accordance with that idea, the sentence in that regard will read as follows " shall insert in the grant such terms and conditions recommended by the board of docks as will protect the public interests of the city in respect to navigation and commerce." Such a reading would not sustain the relator's position. For it would only require the commissioners to insert such of the proposed conditions as would protect the public interests of the city in respect to navigation and commerce. That would vest in the commissioners a discretion ; it would be for them to say what would protect the public interests of the city in the respects named.

It is suggested that the words " as may be " may be interpolated just before the word " recommended," so that then the expression will read as follows, " who shall insert such terms and conditions in the grant *as may be* recommended by the board of docks as will protect the public interests of the city in respect to navigation and commerce." This reading does not help the relator. For there remains, involved in the last part of the sentence, a discretion to be exercised by the commissioners. In order to avoid this, the latter part of the sentence would have to be entirely disregarded.

The statute evidently contemplates that there may be applications, in regard to which the board of docks will determine and so report, that the granting of the same will conflict with the rights of the city or be otherwise injurious to its public interests. Whether in such a case the commissioners have any power to make a grant, need not be here considered, for no such report was made, and this is not an action for an injunction.

The statute also contemplated that there might be cases where the board of docks might determine and report that the grant applied for would not conflict with the rights of the city or be injurious to its public interests, and, therefore, would recommend the grant. In such a case the commissioners were required to insert, in the grant, such terms and conditions as would protect the public interests of the city in respect to navigation and commerce. If the commissioners inserted terms or conditions that they had no right to insert, or if, for any other reason, the city did not deem the grant to be valid, a remedy was provided for the city in the last sentence of the

section which provides that " the validity of any such grant or patent may be judicially determined in an action brought by and in the name of the city."

This view of the statute leads to the conclusion that the construction which the relator gives to section 86 is not permissible.

If the board of docks took no action upon the application, either to condemn it or recommend it, the question might arise whether the commissioners, under their general powers (§ 831 of the charter, § 70 of chap. 317 of 1894), could make a grant. That question is not before us. The present application assumes that the commissioners are in a position to give a grant of some kind, and the only question is whether they are bound to insert the proposed terms and conditions. The validity of the grant, if one is made, we are not called on to consider in this proceeding.

It is argued by the relator that the terms and condititions submitted by the board of docks are reasonable. The commissioners thought otherwise, and I am not persuaded that their conclusion, in this respect, was erroneous. The city apparently took the position that, although they did not care to take and improve the property for the public benefit, still they were not willing that the riparian owner, the only other party that had any right to obtain it, should do so, except at the peril of losing the benefit of his improvements at any time the city should desire to improve in its own way the water front. It is difficult to see how the protection of " the public interests of the city, in respect to navigation and commerce," would require such a burden to be placed upon individual enterprise in a field the city cared not to enter.

The conclusion is, therefore, reached that the relator is not, as matter of legal right, entitled to require the Commissioners of the Land Office to insert in the deed to be given to the applicants the terms and conditions proposed by the board of docks, and, therefore, the order appealed from is not shown to be erroneous.

All concurred.

Order affirmed, with ten dollars costs and disbursements.